# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
### ROANOKE DIVISION

| | |
|---|---|
| RODNEY L. STAMBACK, | ) |
| | ) |
| Plaintiff, | ) |
| | ) Civil Action No. 7:16cv214 |
| v. | ) |
| | ) |
| NANCY A. BERRYHILL, | ) By: Michael F. Urbanski |
| Commissioner of Social Security, | ) Chief United States District Judge |
| | ) |
| Defendant. | ) |

## <u>MEMORANDUM OPINION</u>

This social security disability appeal was referred to the Honorable Robert S. Ballou, United States Magistrate Judge, pursuant to 28 U.S.C. § 636(b)(1)(B), for proposed findings of fact and a recommended disposition. The magistrate judge filed a report and recommendation on June 15, 2017, recommending that plaintiff's motion for summary judgment be denied, the Commissioner's motion for summary judgment be granted and the Commissioner's final decision be affirmed. Plaintiff Rodney L. Stamback has filed objections to the report, the Commissioner has responded, and this matter is now ripe for the court's consideration.

### I.

Rule 72(b) of the Federal Rules of Civil Procedure permits a party to "serve and file specific, written objections" to a magistrate judge's proposed findings and recommendations within fourteen days of being served with a copy of the report. See also 28 U.S.C. § 636(b)(1). The Fourth Circuit has held that an objecting party must do so "with sufficient

specificity so as reasonably to alert the district court of the true ground for the objection."

United States v. Midgette, 478 F.3d 616, 622 (4th Cir.), cert denied, 127 S. Ct. 3032 (2007).

> To conclude otherwise would defeat the purpose of requiring objections. We would be permitting a party to appeal any issue that was before the magistrate judge, regardless of the nature and scope of objections made to the magistrate judge's report. Either the district court would then have to review every issue in the magistrate judge's proposed findings and recommendations or courts of appeals would be required to review issues that the district court never considered. In either case, judicial resources would be wasted and the district court's effectiveness based on help from magistrate judges would be undermined.

Id. The district court must determine de novo any portion of the magistrate judge's report and recommendation to which a proper objection has been made. "The district court may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions." Fed. R. Civ. P. 72(b)(3); accord 28 U.S.C. § 636(b)(1).

If, however, a party "'makes general or conclusory objections that do not direct the court to a specific error in the magistrate judge's proposed findings and recommendations,'" de novo review is not required. Diprospero v. Colvin, No. 5:13-cv-00088-FDW-DSC, 2014 WL 1669806, at *1 (W.D.N.C. Apr. 28, 2014) (quoting Howard Yellow Cabs, Inc. v. United States, 987 F. Supp. 469, 474 (W.D.N.C. 1997) (quoting Orpiano v. Johnson, 687 F.2d 44, 47 (4th Cir. 1982))). "The court will not consider those objections by the plaintiff that are merely conclusory or attempt to object to the entirety of the Report, without focusing the court's attention on specific errors therein." Camper v. Comm'r of Soc. Sec., No. 4:08cv69, 2009 WL 9044111, at *2 (E.D. Va. May 6, 2009), aff'd, 373 F. App'x 346 (4th Cir.), cert.

2

denied, 131 S. Ct. 610 (2010); see Midgette, 478 F.3d at 621 ("Section 636(b)(1) does not

countenance a form of generalized objection to cover all issues addressed by the magistrate

judge; it contemplates that a party's objection to a magistrate judge's report be specific and

particularized, as the statute directs the district court to review only '*those portions* of the

report or *specified* proposed findings or recommendations *to which objection is made*.'"). Such

general objections "have the same effect as a failure to object, or as a waiver of such

objection." Moon v. BWX Technologies, 742 F. Supp. 2d 827, 829 (W.D. Va. 2010), aff'd,

498 F. App'x 268 (4th Cir. 2012); see also Thomas v. Arn, 474 U.S. 140, 154 (1985) ("[T]he

statute does not require the judge to review an issue de novo if no objections are filed").

Additionally, objections that simply reiterate arguments raised before the magistrate

judge are considered to be general objections to the entirety of the report and

recommendation. See Veney v. Astrue, 539 F. Supp. 2d 841, 844-45 (W.D. Va. 2008). As the

court noted in Veney:

> Allowing a litigant to obtain de novo review of [his] entire case
> by merely reformatting an earlier brief as an objection "mak[es]
> the initial reference to the magistrate useless. The functions of
> the district court are effectively duplicated as both the
> magistrate and the district court perform identical tasks. This
> duplication of time and effort wastes judicial resources rather
> than saving them, and runs contrary to the purposes of the
> Magistrates Act." Howard [v. Sec'y of Health & Human Servs.],
> 932 F.2d [505,] [] 509 [(6th Cir. 1991)].

539 F. Supp. 2d at 846. A plaintiff who reiterates his previously-raised arguments will not be

given "the second bite at the apple [ ]he seeks;" instead, his re-filed brief will be treated as a

general objection, which has the same effect as would a failure to object. Id.

3

This case involves a closed period of disability. Stamback filed for disability insurance benefits (DIB) on June 4, 2009 alleging disability beginning April 15, 2003. He was insured through December 31, 2008. Thus, he must establish disability on or before that date in order to be entitled to DIB.

Stamback's DIB claim was denied in a written decision issued by the Administrative Law Judge (ALJ) on July 14, 2011. (Administrative Record, hereinafter "R." at 19-27.) The ALJ determined Stamback had the residual functional capacity (RFC) to perform a limited range of light work (R. 23), and found at step five of the sequential evaluation process that Stamback could perform jobs that exist in significant numbers in the national economy (R. 26); therefore, he was not disabled. The Appeals Council denied review (R. 1-4), and Stamback appealed. On the motion of the Commissioner, the case was remanded for further administrative proceedings. (R. 2047, 2051.)

In the meantime, Stamback filed an application for supplemental security income (SSI) on July 25, 2011, which was approved. State agency physician Bert Spetzler, M.D., determined that Stamback had the RFC to perform only sedentary work and, given his age, education and lack of transferable skills, the medical-vocational rules directed a finding of disability. Stamback was therefore entitled to SSI benefits beginning July 25, 2011.

Following remand, the ALJ held two administrative hearings on Stamback's DIB claim (R. 1986-2023, 2024-46), and enlisted the assistance of Dr. Leonard Rubin in

---

[1] Detailed facts about Stamback's impairments and medical and procedural history can be found in the report and recommendation (ECF No. 23) and in the voluminous administrative transcript (ECF No. 9). As such, they will not be repeated here.

conducting an independent review of the medical evidence in this case and opining as to Stamback's RFC (R. 2225-37). In a decision issued on October 19, 2015, the ALJ denied Stamback's DIB claim for benefits, again finding Stamback had the RFC to perform a limited range of light work during the relevant period, and determining at step five that there were jobs that exist in significant numbers in the national economy that Stamback could perform. (R. 1963-78.) The Appeals Council denied Stamback's request for review, and this appeal followed.

In a lengthy summary judgment brief, Stamback raised six arguments[2] before the magistrate judge in support of his contention that the ALJ's decision to deny his DIB claim is not supported by substantial evidence. Stamback's objections to the magistrate judge's report and recommendation mirror those six summary judgment arguments. Compare Pl.'s Obj., ECF No. 24 with Pl.'s Summ. J. Br., ECF No. 15. On the whole, Stamback's objections are general objections to the magistrate judge's conclusions; he seeks review of his entire case, rather than points to specific errors in the magistrate judge's analysis. This defeats the entire purpose of magistrate judge review. See Midgette, 478 F.3d at 621-22; see also Howard v. Sec'y of Health & Human Servs., 932 F.2d 505, 509 (6th Cir. 1991).

## A.

For instance, on summary judgment, Stamback argued the ALJ erred in failing to give greater weight to the opinions of his treating cardiologist, Dr. McLuckie, and primary care physician, Dr. Watts, as to Stamback's RFC. After considering these arguments, the magistrate judge held that the ALJ appropriately considered the factors set forth in 20 C.F.R.

---

[2] Plaintiff's sixth argument, that the ALJ failed to perform a proper function-by-function analysis, is included under subsection V in plaintiff's brief. Pl.'s Summ. J. Br., ECF No. 15, at 44.

§ 404.1527(c)(2)-(5) and adequately explained his reasons for giving these opinions little weight. The magistrate judge determined that substantial evidence in the record supports the ALJ's decision in that regard. Report & Recommendation, ECF No. 23, at 9-11. In his objections, Stamback argues this conclusion is erroneous for a number of reasons, all of which he previously argued in his summary judgment brief:

- The ALJ erroneously stated that Stamback's treatment with Dr. McLuckie ended "long" before Dr. McLuckie completed his cardiac RFC form in May 2011, as Stamback had treated with another doctor in the same practice, Dr. Rutherford, in December 2010. Compare Pl.'s Obj., ECF No. 24, at 2 with Pl.'s Summ. J. Br., ECF No. 15, at 27.

- The ALJ erroneously asserts that Stamback recovered quickly after his first cardiac treatment in 2002 and that he did not complain about cardiac symptoms again until 2008, when in fact the record documents complaints to Dr. England that he suffered from occasional chest pain, a finding by Dr. England that he was limited in daily activities, and an echocardiogram in September 2004 that revealed moderately to severely decreased left ventricular ejection fraction of 25-30%. Compare Pl.'s Obj., ECF No. 24, at 2 with Pl.'s Summ. J. Br., ECF No. 15, at 26-27.

- The ALJ's conclusion that the stenting procedure in 2008 successfully eliminated plaintiff's symptoms is erroneous, as plaintiff subsequently reported experiencing dyspnea with exertion during the relevant period. Compare Pl.'s Obj., ECF No. 24, at 3 with Pl.'s Summ. J. Br., ECF No. 15, at 27.

- The ALJ rejected the opinions of Drs. McLuckie and Watts because they were rendered after the date last insured, but he accepted the opinions of non-examining physicians who rendered opinions after the date last insured. Compare Pl.'s Obj., ECF No. 24, at 3, 4 with Pl.'s Summ. J. Br., ECF No. 15, at 28, 33.

- The ALJ erred in rejecting the opinions of Drs. McLuckie and Watts because they consist of mere checkbox forms. Compare Pl.'s Obj., ECF No. 24, at 3 with Pl.'s Summ. J. Br., ECF No. 15, at 29.

The magistrate judge addressed all of these arguments at length in his report and recommendation. Stamback simply reasserts them here without pointing to any specific errors made in the report, aside from the general conclusion that substantial evidence

6

supports the ALJ's decision. This general objection to the magistrate judge's report does not warrant de novo review by the court. In any event, having reviewed the record, the court agrees with the magistrate judge that substantial evidence supports the ALJ's decision to give the opinions of Drs. McLuckie and Watts little weight.

## B.

In his second objection to the report and recommendation, Stamback likewise reiterates his previous argument that the independent medical consultant, Dr. Rubin, offered no explanation for his change in opinion, and that the ALJ gave greater weight to the opinions of the non-examining state agency physicians and Dr. Rubin than he did Stamback's treating physicians. Compare Pl.'s Obj., ECF No. 24, at 4 with Pl.'s Summ. J. Br., ECF No. 15, at 35-36. Again, the magistrate judge fully addressed these arguments in his report, ECF No. 23, at 12, noting the ALJ adequately explained his decision to give significant weight to the opinions of these non-examining physicians over those of Stamback's treating physicians. Stamback insists the record documents continued complaints of pain in his right shoulder following his surgery in 2003, Pl.'s Obj., ECF No. 24, at 5, just as he did on summary judgment, Pl.'s Summ. J. Br., ECF No. 15, at 30-31. As the ALJ noted, however, "the objective medical evidence, including diagnostic imaging, testing, and physical examination results show only mild abnormalities. After the claimant's shoulder surgery, physical examination revealed mostly normal musculoskeletal findings. He had near normal range of motion in his shoulder, and he did not complain of tenderness to palpitation in his shoulder when distracted." (R. 1975; see also R. 264.) Indeed, Stamback's

7

treating orthopedic surgeon Dr. David Novak noted in 2004[3] that Stamback could return to light duty work (R. 266), and prescribed a course of conservative treatment, including "[physical] therapy, possible localized injection, acupuncture." (R. 265.) The ALJ did not, as Stamback asserts, mischaracterize the evidence.

As regards Dr. Rubin, it is the job of the ALJ, not this court, to weigh the evidence. Dr. Rubin reviewed the entirety of the medical evidence in this case and on March 22, 2015 answered certain interrogatories as to Stamback's RFC. (R. 2226-34.) The ALJ found some inconsistency in Dr. Rubin's opinion, however. In response to a question about whether Stamback's impairments meet or equal a listed impairment, Dr. Rubin remarked "no", explaining:

> Patient has C6 degeneration demonstrated by EMG in January 2005, but according to RFC (Ex. 26F) dated 2009,[4] he is able to lift 20lbs occasionally and 10lbs frequently; he can stand and walk 6 hours in an 8-hour day.

(R. 2227.) Yet, on his Medical Source Statement of Ability to Do Work-Related Activities (Physical), Dr. Rubin checked boxes indicating Stamback could only stand 2 hours and walk 2 hours in an 8-hour day. (R. 2230.)

Finding it inconsistent for Dr. Rubin to remark in a written narrative that Stamback did not meet a listing because he had the ability to stand and walk 6 hours in a workday and then on the next page check a box indicating plaintiff could only stand and walk 4 hours in a workday, the ALJ asked Dr. Rubin to "clarify [his] responses to indicate whether the claimant can stand and walk 4 hours or 6 hours out of 8." (R. 2237.) Dr. Rubin responded

---

[3] Stamback did not seek treatment from Dr. Novak after 2004. While he points out that he subsequently complained to Dr. Tanner of Blue Ridge Physical Medicine of shoulder pain, he did not treat with her after 2006. It should be noted that Dr. Tanner also remarked that Stamback could perform light duty work. (R. 827, 925.)

[4] This reference is to the opinion of the state agency physician.

8

by changing his answer on the medical source statement to indicate Stamback could stand 6 hours and walk 6 hours in an eight hour day and initialing those changes. (R. 2236.)

At the second administrative hearing held on remand (R. 2033-34), as well as on summary judgment, Stamback argued that Dr. Rubin had merely recited the state agency physician's RFC determination in the narrative part of the form, rather than give his own opinion as to Stamback's ability to stand and walk, and gave no explanation for the subsequent change in his opinion on the medical source statement following the ALJ's inquiry. The ALJ plainly considered this argument and remarked at the second administrative hearing:

> I do want to point one thing out, you know, there seems to be a question of whether he just recited the DDS opinion, but there are some differences in manipulative, reaching limitations, foot control operations, exposure to hazards. Some of the non-exertionals in Dr. Rubin's, even his first opinion before the clarification, are somewhat different than [the state agency physician's in] 26F, so it's not just an exact recitation of the function-by-function.

(R. 2036.) Later in his decision, the ALJ addressed Stamback's argument again:

> The claimant's attorney argued that more weight should be given to the checkbox portion of Dr. Rubin's original medical source statement, even though it was inconsistent with the narrative section of his own report. She argued that the narrative portion was only repeating the state agency's opinion, so the checkbox portion constituted Dr. Rubin's actual opinion. Dr. Rubin's initial opinion was ambiguous as to whether he believed the claimant can perform six hours standing and walking or only 2 to 4 hours of standing and walking in a workday. There was no clear indication as to whether the original narrative portion or checkbox portion represented Dr. Rubin's opinion. That is why the undersigned sent additional interrogatories asking him to clarify his opinion. His second response shows that he clearly opined that the claimant could stand or walk for six hours in an eight-hour workday.

9

> Therefore, the clarification and the narratives in the opinion are
> given the most weight.

(R. 1974.) The ALJ further stated he gave Dr. Rubin's clarification significant weight because

his opinion is consistent with the medical evidence of record, specifically noting that Dr.

Rubin "cited medical evidence showing the claimant underwent shoulder surgery but

received little treatment after that. He also had a stent placed in 2002, but he had no serious

cardiac complaints after that." (R. 1974.)

The ALJ adequately explained his reasons for giving significant weight to the clarified

opinion of Dr. Rubin, and substantial evidence in the record supports the ALJ's decision in

that regard. The court declines Stamback's invitation to reweigh the evidence in this case.

**C.**

Stamback's third argument on summary judgment was that the ALJ failed to properly

consider his mental impairments under Social Security Ruling 96-8p—specifically, by failing

to properly assess his moderate limitations in concentration, persistence or pace. Pl.'s Summ.

J. Br., ECF No. 15, at 36. He argued: "Simply limiting plaintiff to simple, routine, unskilled

tasks in his RFC assessment is not enough to fulfill SSR 96-8p." Id. at 37.

After setting forth the requirements of SSR 96-8p, the magistrate judge determined

that the ALJ's discussion of Stamback's mental impairments satisfied those requirements by

providing a narrative discussion of his mental impairments and treatment, and that the ALJ

properly accounted for Stamback's moderate limitations in concentration, persistence and

pace by limiting him to simple, routine, unskilled tasks and to work that allows for breaks

10

every two hours.[5] Report & Recommendation, ECF No. 23, at 14-15. The magistrate judge determined that this is "not a situation like Mascio [v. Colvin, 780 F.3d 632 (4th Cir. 2015)], where the ALJ summarily concluded that a limitation to simple, unskilled work accounts for the claimant's moderate limitation in concentration, persistence and pace without further analysis." Report & Recommendation, ECF No. 23, at 16. Rather, here, the ALJ "specifically accounted for a diminished ability to stay on task by providing for breaks every two hours, and explained why Stamback's moderate limitations in concentration, persistence, and pace were accommodated by a restriction to simple, unskilled work, with breaks every two hours." Id.

In what is perhaps the one specific objection raised by Stamback to the magistrate judge's analysis in this case, Stamback argues that the ALJ's RFC findings do not specifically link the need for breaks at least every two hours to plaintiff's moderate limitations in concentration, persistence or pace, and "[t]he ALJ does not state whether the need for breaks is due to plaintiff's physical impairments or mental impairments." Pl.'s Obj., ECF No. 24, at 7. This argument, however, is belied by the record. The ALJ expressly states in his decision: "Because there is little evidence of any mental deficits, the undersigned has given the claimant only 2 limitations to his mental residual functional capacity, which are the limitation to simple, routine, unskilled tasks and the need for a normal work break every two hours." (R. 1976.) Moreover, contrary to Stamback's assertions, the ALJ adequately explained how he arrived at this conclusion. He noted in his decision that although

[5] By making this RFC determination, the ALJ credited Stamback's testimony over the opinion of the state agency physicians, who determined his anxiety disorder was nonsevere and only cause mild limitations in concentration, persistence or pace. (R. 1972.)

11

Stamback took routine medication for his anxiety, he rarely complained of active mental symptoms related to this disorder, never went to counseling, never needed inpatient treatment prior to the date last insured, never alleged significant limitations in social functioning to his practitioners, and almost always had a normal mental status at his appointments, suggesting his medications worked well to control any symptoms. (R. 1976.) The ALJ further explained:

> Even though the claimant rarely complained of active mental symptoms, he took two or three psychiatric medications to treat his anxiety and insomnia. The medical evidence suggests that his medications controlled his symptoms well, but it is still possible that he had some, which could cause moderate limitation. There is no evidence suggesting marked limitations. The claimant had a normal mental status at his appointments. He did not usually complain of difficulties with concentration, persistence, and pace.

(R. 1967.) The ALJ did not summarily limit Stamback to simple, routine, unskilled tasks without explanation, as plaintiff suggests. Substantial evidence supports his RFC determination as regards Stamback's mental impairments.

**D.**

Portions of plaintiff's fourth objection to the report and recommendation are taken verbatim from his summary judgment brief, in which he argued that the ALJ erroneously concluded that the state agency physician's opinion in the subsequent SSI claim was based upon evidence that post-dated plaintiff's date last insured. Compare Pl.'s Obj., ECF No. 24, at 10 with Pl.'s Summ. J. Br., ECF No. 15, at 40-41. This argument was considered, and rejected, by the magistrate judge. As the magistrate judge determined, the ALJ specifically explained his reason for giving little weight to the 2011 SSI decision, noting that decision

was based on cardiac treatment evidence beginning May 2010, which showed an enlarged heart and multiple stents placed in 2010, as well as a reduced ejection fraction on an echocardiogram from June 2011. (R. 1974.) The ALJ held:

> While such evidence supports the onset date in July 2011, it is of little relevance to the claimant's functioning in 2008, his date last insured. As noted above in this decision, the claimant underwent little cardiac treatment before the date last insured. He had a procedure in 2008, but it was successful, and he complained of no cardiac symptoms again until May 2010. Objective diagnostic testing shows that his cardiac condition had worsened significantly by 2010 or 2011. This supports the limitation to sedentary work at that time, but it does not support such a limitation before the claimant's date last insured.

(R. 1974.) Substantial evidence supports the ALJ's decision in this regard, and the court finds no error in the magistrate judge's decision.

## E.

In his fifth objection to the magistrate judge's report, Stamback reiterates three points raised in his summary judgment brief— that the ALJ improperly assessed his credibility by noting (1) that Stamback only took acetaminophen for pain, when in fact he took Acetaminophen-Caff-Butalbital, which contains a barbiturate; (2) that the record documents he performed certain activities, such as climbing a ladder and using a chainsaw, inconsistent with the level of pain and limitation he claims, when those activities were not performed on a sustained basis; and (3) that Stamback's migraines improved after cervical steroid injections, when in fact he continued to complain of migraines. Compare Pl.'s Obj., ECF No. 24, at 11-12 with Pl.'s Summ. J. Br., ECF No. 15, at 41-44. As the magistrate judge determined, substantial evidence supports the ALJ's determination that Stamback is only partially credible, which he explained in detail in his written decision. Credibility

13

determinations are emphatically the province of the ALJ, not the court, and courts normally should not interfere with these determinations. See, e.g., Chafin v. Shalala, No. 92–1847, 1993 WL 329980, at *2 (4th Cir. Aug. 31, 1993) (per curiam) (citing Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990) and Thomas v. Celebrezze, 331 F.2d 541, 543 (4th Cir. 1964)); Melvin v. Astrue, 6:06 CV 00032, 2007 WL 1960600, at *1 (W.D. Va. July 5, 2007) (citing Hatcher v. Sec'y of Health & Human Servs., 898 F.2d 21, 23 (4th Cir. 1989)). Stamback points to no specific error made in the magistrate judge's report, and the court finds no error in the magistrate judge's consideration of the ALJ's credibility analysis.

## F.

Finally, Stamback reiterates his argument that the ALJ failed to perform a function-by-function analysis and therefore runs afoul of SSR 96-8p. Stamback, once again, points to no error in the magistrate judge's analysis but rather disagrees generally with his conclusion that the ALJ provided a sufficient narrative discussion to allow for meaningful review. The court finds no error in the magistrate judge's conclusion. In an exhaustive decision, the ALJ outlined Stamback's medical history issue by issue, all of the opinion evidence of record, Stamback's complaints and testimony, and the ALJ's conclusions. There is simply no merit to Stamback's argument that the ALJ failed to meet the requirements of SSR 96-8p or that the ALJ's decision does not provide sufficient information to allow for meaningful review.

## III.

At the end of the day, it is not the province of a federal court to make administrative disability decisions. Rather, judicial review of disability cases is limited to determining whether substantial evidence supports the Commissioner's conclusion that the plaintiff failed

to meet his burden of proving disability. See Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990); see also Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966). To that end, the court may neither undertake a de novo review of the Commissioner's decision nor re-weigh the evidence of record. Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1992). Evidence is substantial when, considering the record as a whole, it might be deemed adequate to support a conclusion by a reasonable mind, Richardson v. Perales, 402 U.S. 389, 401 (1971), or when it would be sufficient to refuse a directed verdict in a jury trial. Smith v. Chater, 99 F.3d 635, 638 (4th Cir. 1996). Substantial evidence is not a "large or considerable amount of evidence," Pierce v. Underwood, 487 U.S. 552, 565 (1988), but is more than a mere scintilla and somewhat less than a preponderance. Perales, 402 U.S. at 401; Laws, 368 F.2d at 642. If the Commissioner's decision is supported by substantial evidence, it must be affirmed. 42 U.S.C. § 405(g); Perales, 402 U.S. at 401.

The court has reviewed the magistrate judge's report, the objections to the report, and the administrative record and finds that the magistrate judge was correct in concluding that there is substantial evidence in the record to support the ALJ's decision in this DIB case. As such, the magistrate judge's report and recommendation will be adopted in its entirety.

An appropriate Order will be entered to that effect.

Entered: 09/28/2017

Michael F. Urbanski
Chief United States District Judge